PEOPLE v. DUGAN

EXTORTION—EVIDENCE—WITNESS'S VERSION OF RECORDING—ELEMENTS OF CRIME.

> Admission in evidence of a typed statement of another person's version of what was recorded on a tape of a conversation between the complainant and defendant was of such a prejudicial nature as to be manifestly gross reversible error where the original recording was inconclusive, or at best garbled, because the very essence of the offense of extortion, with which defendant was charged, was precisely what defendant said and a missing word or phrase could change an extortionary threat into a mere demand for payment of a gambling loss.

Appeal from Macomb, Frank E. Jeannette, J. Submitted Division 1 November 9, 1970, at Detroit. (Docket No. 7204.) Decided December 9, 1970.

Paul F. Dugan was convicted of extortion. Defendant appeals. Reversed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *George N. Parris,* Prosecuting Attorney, *Thaddeus F. Hamera,* Chief Appellate Lawyer, and *Don L. Milbourn,* Assistant Prosecuting Attorney, for the people.

*Johnston & Wendt,* for defendant.

REFERENCES FOR POINTS IN HEADNOTE
31 Am Jur 2d, Extortion and Blackmail § 13.
29 Am Jur 2d, Evidence § 436.

Before:  McGREGOR,  P.  J.,  and  HOLBROOK  and O'HARA,* JJ.

O'HARA, J.  This is an appeal of right from a jury verdict of guilty on the charge of extortion.[1]

To understand the legal issue upon which we decide the case, a recitation of the background out of which the alleged extortion grew is necessary.

The complaining witness, whose automobile was being purchased on the installment plan, and whose preinduction fiscal affairs hardly suggest great affluence, incredibly flipped a coin for $5,000. He lost. He flipped again for the same amount. He lost again. This took place at the end of an evening of card playing and drinking. Complainant did not heed the wise admonition of the gambling fraternity, "If you can't pay, don't play." The winner and defendant herein offered to accept a thousand dollars in full payment. Complainant could not raise this amount. It is alleged that defendant threatened complainant with some unpleasant consequences if he did not pay up. Complainant reported his plight to the Warren Police Department. They outfitted him with a small concealed tape recorder. He was then instructed to arrange a meeting with defendant at a pre-arranged location. The police, in an unmarked squad car equipped with some other electronic device, was to record the conversation.

The meeting took place and the conversation, or at least parts of it, was recorded. Out of the use of this evidence at trial grew the issues raised on appeal.

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

[1] MCLA § 750.213 (Stat Ann 1962 Rev § 28.410).

It is of the gravest importance that the point on which we base our decision be thoroughly understood so that the bench and bar are not misled.

We strive to be completely clear and definitive. This is *not* a constitutional question. Although a constitutional issue was raised by defendant, we do not reach it.[2]

We base our decision on the inadmissibility of evidence of such a prejudicial nature as to have risen to the level of reversible error.

The original recording of the conversation between complainant and defendant was identified, admitted and played back in the courtroom, in the judge's chambers, and in the jury room. It was designated people's Exhibit No. 1.

For a reason not made clear to us in the record, the court reporter took no stenographic notes directly from the playback of this recording.

A second transcription of the conversation was made from the original by one of the officers involved in recording the conversation. It was from this recording of a recording that the court reporter made his official transcript for the record.

Exhibit No. 2 was two pages of typewriting. The typing was done by someone not identified or produced as a witness at the trial. Whoever typed it, typed it from the handwriting of Officer Wilson who did testify. We quote from the trial transcript:

"*Q.* (*defense counsel*): So, that as I now understand you, people's proposed Exhibit Number 2 is your summary of what you heard when you listened back to the tape, which is people's proposed Exhibit Number 1?

"*A.* Right, correct.

---

[2] The United States Supreme Court has heard and reheard the issue in *United States* v. *White* (CA7, 1969), 405 F2d 838, *cert granted* April 7, 1969, 394 US 957 (89 S Ct 1305, 22 L Ed 2d 559). An opinion may well be forthcoming before the end of the year.

"*Q.* And I believe you also stated that that transcript, let's call it, or those notes of yours, do not attempt to represent everything that was said at that meeting between Mr. Dugan and Mr. Getty, either, is that correct?

"*A.* That's correct.

*        *        *

"*Q.* In any event, we do agree that your Exhibit 2 is your attempt to listen to, to understand, to hear and to write down what one would hear if they listened to Exhibit 1, the tape itself, right?

"*A.* Yes."

Defense counsel objected on every conceivable ground that could be raised. For almost 10 pages in the trial transcript he continued to point out his reasons. In weary summary, he finally said:

"So, again, I object to that exhibit. Let the (the jury) hear what the complaining witness says, let them hear what the defendant says, let them hear what the recording says, but don't let them hear, this is what somebody else said I heard. I would like to write up a version of what I heard and let them read mine, too. *That is not what witnesses are for.*" (Emphasis supplied.)

We agree. The evidentiary effect of what was given to the jury to read was no different from giving the jury a newspaper article containing the reporter's impressions and conclusions. The prejudicial nature of the admission of the typed statement is the more significant because of what the foreman of the jury reported to the court:

"*Mr. Wagnon (Foreman)*: Your Honor,   *   *   * we have tried to play it back to get more fully what happened, and sometimes the tape just doesn't respond bringing it back."

Indeed the trial court was dissatisfied with the auditory recording. He said:

"Let the record show that the court has listened back to the recording as played back today, and as far as this court is concerned it's just as confusing * * * as it was yesterday."

With Exhibit No. 1 inconclusive, or at best garbled, the presence in the record of another person's version of what was recorded was manifestly gross error.

In this case the very essence of the alleged offense was precisely what the defendant said. A missing word or phrase could change an extortionary threat into mere demand for payment.

We cite no particular authority. None is needed. The record of what happened speaks for itself.

The judgment of conviction is reversed.

All concurred.