PEOPLE *v.* KARALLA

PEOPLE *v.* STEPHAN

1. ATTORNEY GENERAL—POWERS—SCOPE OF POWERS.

The Attorney General possesses all the powers of a prosecuting attorney unless that power has been specifically withdrawn by the Legislature.

2. ATTORNEY GENERAL—POWERS—INITIATING PROSECUTION.

The Attorney General may initiate a prosecution (MCLA §§ 14.28, 49.153).

3. ATTORNEY GENERAL—POWERS—AUTHORIZING WARRANT.

The Attorney General may authorize a warrant (MCLA §§ 14.28, 764.1).

4. CRIMINAL LAW — EVIDENCE — TAPE-RECORDED CONVERSATION — ADMISSIBILITY — CONSENT OF ONE PARTY.

A recording of a conversation may be admitted into evidence

REFERENCES FOR POINTS IN HEADNOTES
[1–3] 7 Am Jur 2d, Attorney General § 6 *et seq.*
[4–6] 29 Am Jur 2d, Evidence §§ 380 *et seq.*, 428 *et seq.*
Admissibility of sound recordings in eviednce.  58 ALR2d 1024.
Admissibility of sound recordings as evidence in federal criminal trial.  10 L Ed 2d 1169.

where the recording was made with the consent of one of the parties to the conversation.

5. Criminal Law—Evidence—Tape-Recorded Conversation—Partially-Defective Recording—Admissibility.

Admitting into evidence a tape-recorded conversation was not error even though defendants contended that the recording was partially unintelligible where the trial court listened to the recording and determined that except for a few words it was intelligible and not misleading.

6. Criminal Law—Evidence—Tape-Recorded Conversation—Transcript of Tape Recording—Use of Transcript.

Allowing the jury to read a transcript of a tape-recorded conversation was not error where the transcript was prepared directly from the recording, the trial court thoroughly compared the recording and the transcript before permitting the jury to see the transcript, the recording except for a few words was easily understandable, and the transcript did not attempt to reproduce those portions of the recording not clearly audible.

Appeal from Macomb, Norman A. Baguley, J. Submitted Division 2 June 6, 1971, at Lansing. (Docket Nos. 10443, 10444.) Decided August 24, 1971. Leave to appeal denied, 386 Mich 765.

James J. Karalla and Clarence Stephan were convicted of conspiracy to commit extortion. Defendants appeal. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Robert C. Goussy* and *John A. Wilson,* Assistant Attorneys General, for the people.

*Towner, Rosin & York* and *Neil H. Fink,* for defendants on appeal.

Before: Danhof, P. J., and Bronson and O'Hara,* JJ.

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

DANHOF, J. After a jury trial the defendants were convicted of conspiracy to commit extortion, MCLA § 750.157a (Stat Ann 1971 Cum Supp § 28.354 [1]) and MCLA § 750.213 (Stat Ann 1962 Rev § 28.410). They appeal, raising five issues.

Defendants' first two issues revolve around the fact that the entire prosecution was handled by the office of the Attorney General and the Macomb Prosecuting Attorney took no part in the prosecution. Defendants argue that the Attorney General has no authority to initiate a prosecution or to authorize a warrant.

Defendants claim the Attorney General lacks the power to initiate a prosecution because by statute, MCLA § 49.153 (Stat Ann 1961 Rev § 5.751), that power is conferred on the prosecuting attorney, and further that by statute, MCLA § 14.28 (Stat Ann 1969 Rev § 3.181), the Attorney General is given only the power to intervene in proceedings. In essence this is the same argument that was made in *In re Lewis' Estate* (1938), 287 Mich 179, 183, 184 where the Court stated:

"The contention that the terms of the statute, authorizing the prosecuting attorney to institute proceedings for reimbursement of the State, excludes action by the attorney general, is without merit.

"The act does not carry any such exclusion and, if anything is to be read into it on that subject it is 1 Comp Laws 1929, § 176 (Stat Ann § 3.181), and 1 Comp Laws 1929, § 187 (Stat Ann § 3.211), which permit the attorney general to intervene at any stage of proceedings, 'when in his own judgment the interests of the State require it.'

"While a distinction may be drawn between intervening in a proceeding and instituting a suit there is merger of purpose, by reason of public policy,

when the interests of the State call for action by its chief law officer and there is no express legislative restriction to the contrary.

"In *Mundy* v. *McDonald* [1921], 216 Mich 444, 450 (20 ALR 398), we said of the office of attorney general:

" 'We must recognize the fact that the office of attorney general is ancient in its origin and history, and it is generally held by the States of the Union that the attorney general has a wide range of powers at common law. These are in addition to his statutory powers.'

"The act under consideration in authorizing the prosecuting attorney to petition the probate court does not in terms, implication or public purpose, exclude or curtail like action by the attorney general."

Defendants' contention that the Attorney General may not authorize a warrant is based on MCLA § 764.1 (Stat Ann 1954 Rev § 28.860) which requires that the issuance of an arrest warrant be authorized by the prosecuting attorney. This contention is also without merit.

On the basis of *In re Lewis' Estate, supra,* and other authority, see *In re Watson* (1940), 293 Mich 263, *People* v. *Rich* (1927), 237 Mich 481, we conclude that the Attorney General possesses all the powers of a prosecuting attorney unless that power has been specifically withdrawn by the Legislature. This, the Legislature has not done.

Defendants' last three issues relate to the trial court's admitting certain sound recordings into evidence, and in allowing the jury to make use of a typewritten transcript of a recording. The recordings were of two types. Several were recordings of telephone conversations, and one was a recording of a face-to-face conversation. The complaining

witness was a party to all of the conversations. Some of the conversations were with Karalla and some with Stephan. The complaining witness gave the police his permission to make the recordings although defendants were unaware that the recordings were being made. The defendants contend that the admission of the tapes was a violation of the Fourth Amendment of the United States Constitution, relying on *Katz* v. *United States* (1967), 389 US 347 (88 S Ct 507, 19 L Ed 2d 576).

This Court has held that when a recording is made with the consent of one party to the conversation the admission of the recording does not violate the defendant's constitutional rights. *People* v. *Bruno* (1971), 30 Mich App 375. The most recent pronouncement of the United States Supreme Court on this subject is *United States* v. *White* (1971), 401 US 745 (91 S Ct 1122, 28 L Ed 2d 453) where a majority of the justices gave their approval to the admission of a recording when one party to the conversation has given his consent to the recording. Thus, it was not error to admit the recordings under the facts of this case.

The defendants contend that it was improper to admit the recordings because they were partially unintelligible. The rule governing the admission of partially defective recordings was stated in *Addison* v. *United States* (CA5, 1963), 317 F2d 808, 815:

"There is no merit on the ground of appeal criticizing the admission into evidence of a tape recording of a conversation or speech made by Addison. It was a tape recording which was made by one of the invited guests by the use of a small radio which was tuned in with a receiving instrument that made a mechanical transcription of the speech. Appellants do not dispute the general proposition that such a tape recording is admissible in evidence.

Their principal objection is that approximately one-half of the tape was defective and the speech or conversation recorded there was not available for the trial. We agree with what was said by the Court of Appeals for the Third Circuit in *United States* v. *Schanerman* [CA3, 1945], 150 F2d 941, 944, 'There would be no more valid reason for exclusion of the mechanically recorded conversations than there would be for excluding competent conversations, overheard in part, by human witnesses.' See also *Monroe* v. *United States* [1956], 98 US App DC 228 (234 F2d 49) where at page 55 the Court said, 'Unless the unintelligible portions are so substantial as to render the recording as a whole untrustworthy the recording is admissible, and the decision should be left to the sound discretion of the trial judge.' Here there was ample basis for the trial court's finding that the part that was reproduced was an accurate reproduction of the conversation it purported to reproduce."

In this case the trial judge listened to the recordings and determined that, except for a few words, it was intelligible and that it was not misleading. Our review of the record convinces us that this ruling was correct.

The defendants' final contention is that it was error to allow the jury to make use of a transcript of a recording. The use of transcripts has been compared to the use of photographs, drawings, maps, or mechanical models. *People* v. *Feld* (1953), 305 NY 322 (113 NE 2d 440). The weight of authority allows the use of transcripts. See Anno: Admissibility of Sound Recordings in Evidence, 58 ALR2d 1024. We agree and conclude it was not error to allow the jury to make use of the transcript.

The case of *People* v. *Dugan* (1970), 29 Mich App 76 has been called to our attention. However, we do not believe that *Dugan* is inconsistent with our

holding in this case. In *Dugan* a recording which was of highly unsatisfactory quality was played to the jury. The "transcript" was a typewritten statement prepared from some handwritten notes that were only intended as a summary of the conversation.

In this case except for a few words the recording is easily understandable. The transcript was prepared directly from the recording. The trial court made a very thorough comparison of the recording and the transcript before he allowed the jury to see the transcript. The transcript does not attempt to reproduce those portions of the recording that were not clearly audible. The errors present in *Dugan* are not present here.

Affirmed.

All concurred.