FIEGER v COX
*In re* FIEGER

Docket Nos. 266264, 267309. Submitted May 3, 2006, at Lansing. Decided
    February 27, 2007, at 9:40 a.m. Leave to appeal denied, 480 Mich ___.
Geoffrey N. Fieger and others brought an action in the Ingham
    Circuit Court against Michael A. Cox, individually and in his
    official capacity as Attorney General, Terri Lynn Land, individu-
    ally and in her official capacity as Secretary of State, and others,
    seeking mandamus and injunctive relief. The defendants were
    involved in an investigation of the plaintiffs' alleged violations of
    the Michigan Campaign Finance Act, MCL 169.201 *et seq.*, in
    connection with advertisements sponsored by Citizens for Judicial
    Reform (CJR) opposing the reelection of a Michigan Supreme
    Court justice. The plaintiffs sought mandamus and injunctive
    relief requiring the Secretary of State's office to withdraw its
    referral of CJR to the Attorney General for investigation and
    requiring the Attorney General's office to withdraw all search
    warrants and investigative subpoenas issued and cease its inves-
    tigation. The plaintiffs asserted that they were entitled to a
    superintending control order over the 54-B District Court, David
    L. Jordon, J., to preclude the district court's issuance of search
    warrants, investigative subpoenas, and orders to compel the
    production of documents and any other participation in the
    investigation. The circuit court, James R. Giddings, J., entered a
    temporary restraining order that, although not phrased in terms
    of superintending control, included a stay of further action by the
    district court in this matter. The plaintiffs also filed a separate
    complaint for a superintending control order against the district
    court with regard to the same issues. The circuit court entered a
    superintending control order requiring, among other things, that
    the district court order the Attorney General to return items
    seized pursuant to a particular search warrant and that the
    district court issue no further search warrants or investigative
    subpoenas directed toward the plaintiffs. The defendants appealed
    the orders, and the Court of Appeals consolidated the appeals.
    The Court of Appeals *held*:

The circuit court erred by failing to dismiss the plaintiffs' actions. The plaintiffs could have sought to appeal the district court's issuance of search warrants and investigative subpoenas. Because the plaintiffs had a legal remedy by way of appeal, MCR 3.302(D)(2) required the circuit court to dismiss the plaintiffs' actions seeking superintending control. By filing the complaints, the plaintiffs improperly circumvented the appellate process and engaged in a variant of forum-shopping to thwart a proper felony investigation by the Secretary of State and the Attorney General. The Attorney General's investigation fully comported with the specific statutory provisions governing it. Because the Attorney General did not abuse his authority, the circuit court's interference with and restraint of the investigation through a restraining order constituted a violation of the separation of powers doctrine.

Reversed.

SUPERINTENDING CONTROL — ACTIONS — APPEALS.

A court may not exercise superintending control and must dismiss a complaint for superintending control if an appeal, including an interlocutory appeal, is available to the plaintiff (MCR 3.302[D][1]).

*Morganroth and Morganroth, PLLC* (by *Mayer Morganroth*); *Rockind & Liss, PLLC* (by *Neil S. Rockind*), *Richard L. Steinberg, P.C.* (by *Richard L. Steinberg*), and *Schwartz, Kelly & Otarz-Schwartz, P.C.* (by *Michael Alan Schwartz*), for the plaintiffs.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Margaret A. Nelson* and *Heather S. Meingast*, Assistant Attorneys General, for the defendants.

Before: BORRELLO, P.J., and SAAD and WILDER, JJ.

SAAD, J. These consolidated appeals arise from an investigation conducted by defendants into plaintiffs' alleged criminal violations of the Michigan Campaign Finance Act (MCFA), MCL 169.201 *et seq*. We hold that plaintiffs improperly sought to challenge district court

orders by initiating original civil actions for superintending control, mandamus, and injunctions and that the circuit court erred by failing to dismiss the cases.

## I. NATURE OF THE CASE

The Attorney General investigated attorney Geoffrey Fieger for illegal interference with the election of a justice to our Supreme Court, as well as attempts to circumvent the campaign finance and reporting laws promulgated by our Legislature. These consolidated appeals involve equally serious questions regarding an attempt by Fieger and others to thwart the Attorney General's investigation through the manipulation of our court system. The chief law enforcement officer of Michigan, the Attorney General, pursuant to law, was asked by the chief election officer of our state, the Secretary of State, to investigate possible felony violations of the MCFA by plaintiffs, including attorney Geoffrey Fieger. Specifically, the Attorney General was asked to investigate Fieger and his associates for improperly attempting to influence the outcome of the 2004 Michigan Supreme Court election.

The MCFA is designed to ensure openness and honesty in our elections by mandating certain reporting requirements and by prohibiting corporations (including law firms operating as limited liability companies) or their lawyers or agents from making monetary contributions to influence elections. It was alleged that Fieger violated these laws by financing almost half a million dollars' worth of campaign advertisements to defeat a Supreme Court justice in the 2004 election while concealing his involvement.

By properly following statutorily mandated procedures, the Attorney General conducted the felony investigation by seeking warrants and subpoenas in the

district court.[1] Those investigative tools uncovered the suspected Fieger funding of the campaign ads to defeat a justice of the Supreme Court. After the investigation and subpoenas disclosed Fieger's involvement, instead of filing an appeal to challenge the district judge's issuance of the warrants and subpoenas, as the law requires, plaintiffs instead engaged in forum-shopping by filing two separate civil actions to obtain a judge more to plaintiffs' liking who would undo the district judge's work and stop the Attorney General's investigation. Plaintiffs violated Michigan statutes and court rules by circumventing well-established, standard litigation rules that required plaintiffs to appeal if they disagreed with the ruling of the district court. Indeed, by improperly filing separate actions in the circuit court, plaintiffs got a judge to improperly reverse the district judge's rulings and thwart the Attorney General's investigation. Clearly, the circuit judge should have refused to hear a matter that should have been appealed if plaintiffs were dissatisfied with the district court's orders. Instead, the circuit judge exceeded his authority and then improperly rewarded plaintiffs' forum-shopping, first, by wrongfully taking the case and, second, by improperly interfering with a legitimate and proper investigation by the Attorney General.

Beyond the interests of the parties directly involved in this appeal, these cases present an institutional

---

[1] Our exhaustive review of the record reveals that the Secretary of State and the Attorney General clearly complied with Michigan law in the referral and investigation of this matter and in their applications for warrants and subpoenas. Again, if plaintiffs had wished to assert some error in the district judge's issuance of those warrants and subpoenas, they should have raised their legal arguments before the district judge and then followed the proper procedures to appeal his decisions.

conflict of considerable public significance.[2] We cannot countenance the circumvention of the rule of law by any litigant (especially one who is an attorney) who seeks,

---

[2] We note that plaintiffs filed, and this Court denied, a motion to dismiss these appeals as moot, and that the parties raised this issue in their appellate briefs. The parties do not dispute that the Attorney General's office concluded its criminal investigation or that the Attorney General's office determined not to issue or recommend any criminal charges. However, our caselaw states that when an appeal no longer presents an opportunity for an appellate court to fashion relief in the dispute of particular parties, issues of public significance may nonetheless warrant this Court's consideration of the questions raised in the appeal. " 'The courts of this state have long recognized that an appeal does not become moot, despite the change in position of the parties through the passage of time, when the issue is of public significance and is likely to recur.' " *Gen Tel Co of Michigan v Pub Service Comm*, 78 Mich App 528, 533; 260 NW2d 874 (1977), quoting *Regents of the Univ of Michigan v Michigan*, 47 Mich App 23, 27; 208 NW2d 871 (1973).

Because these appeals involve issues of significant public interest, we find it necessary to address this appeal, whether technically moot or not. It is also reasonable to anticipate that these important institutional questions will arise again in a context that would not afford the Attorney General adequate judicial review. The Attorney General possesses a wide range of common-law and statutory powers authorizing him, among other things, to pursue legal actions. *Michigan State Chiropractic Ass'n v Kelley*, 79 Mich App 789, 791-792; 262 NW2d 676 (1977). The Attorney General's broad authority includes "all the powers of a prosecuting attorney unless . . . specifically withdrawn by the Legislature." *People v Karalla*, 35 Mich App 541, 544; 192 NW2d 676 (1971). Certainly, some future instance of illegal activity in Michigan will prompt investigation by the Attorney General. We review this case so that there is clear procedural guidance for the bench and bar in the event a person or entity under future investigation by the Attorney General seeks to resort to the courts to challenge, impede, or overturn the Attorney General's efforts to obtain or execute a search warrant or subpoena. Absent review, the person or entity under investigation may find it advantageous to again resort to such attempts. If, as here, a circuit court either restrains the Attorney General from further investigation or facilitates the return of documents seized by the Attorney General, a substantial possibility exists that the Attorney General's investigation would suffer irreparable damage pending further appeal of the circuit court's ruling. Thus, regardless of whether the Attorney General has concluded its criminal investigation, we must address the fundamental questions concerning the scope of

with the participation of a circuit judge, to thwart a legitimate felony investigation through technical gamesmanship involving our judicial system. Indeed, to do so would encourage other litigants to do the same.

## II. FACTS

During the 2004 general election, various media outlets broadcast advertisements urging voters to vote "No" on the reelection of Michigan Supreme Court Justice STEPHEN MARKMAN. The advertisements were identified as being sponsored by Citizens for Judicial Reform (CJR). CJR first came to the attention of the Department of State (DOS) in October 2004, when a complaint was filed with the DOS pursuant to MCL 169.215(5) that alleged that CJR had violated several provisions of the MCFA, including MCL 169.247, by failing to include mandatory disclaimer language in the television commercials, and MCL 169.224, by failing to file a statement of organization with the Secretary of State. After CJR filed its statement of organization, the Secretary of State investigated the complaint, as mandated by MCL 169.215(9), and resolved it informally, MCL 169.215(10), by notifying CJR of its obligations under MCL 169.247.

CJR next came to the attention of the DOS after CJR failed to file a report of its fall 2004 campaign activity by January 31, 2005, as required by MCL 169.233(3). According to MCL 169.216(6), a DOS "filing official shall determine whether a statement or report that is required to be filed under this act is in fact filed." As explained in the October 26, 2005, affidavit of Anne Corgan, director of the Legal and Regulatory Services

authority of the Attorney General, a constitutional officer of the executive branch, to conduct investigations without unwarranted judicial interference.

Administration of the DOS, the DOS mailed to CJR in February 2005 a notice of its tardy report, and in early March 2005 sent CJR notice of the late filing fee it owed. Corgan averred that on March 16, 2005, after the late filing fee notice "was returned as undeliverable," she "requested the assistance of the Attorney General's Office in bringing CJR into compliance with the MCFA" because CJR had failed to file its report under MCL 169.233(3) and had not responded to the DOS notices. Corgan's notification of the Attorney General clearly complied with MCL 169.216(8), which provides that "[a]fter 9 business days and before 12 business days have expired after the deadline for filing the statement or report, the filing official *shall report errors or omissions that were not corrected and failures to file to the attorney general*." (Emphasis added.)

In late April 2005, CJR filed with the DOS an amended statement of organization that altered the identity of its treasurer, but continued to identify its "official depository" as "Peoples State Bank" in Hamtramck. After receiving Corgan's report concerning CJR's delinquent filing of its campaign statements required under MCL 169.233(3), a special agent of the Attorney General on April 25, 2005, obtained the first in a series of search warrants; the Attorney General had apparently gleaned the identity of CJR's official depository from its October 2004 statement of organization, and the 54-B District Court approved a warrant that authorized the Attorney General to search the "Keeper of the Records, People's State Bank," for CJR records. The district judge later authorized a second warrant to search People's State Bank for records relating to CJR's agent, J.L. Barlow & Associates, Inc., doing business as Client Media Buying.

On May 31, 2005, the DOS received CJR's overdue report of its campaign statement covering October 22,

2004, through December 31, 2004. The summary pages of CJR's campaign-related activities reflects that it received $457,163.65 in *"Anonymous* Contributions,"[3] which comprised its entire receipts, and that it had made this same amount of expenditures. (Emphasis added.) The five-page itemized schedule portion of CJR's triannual report detailed that on October 24, 2004, it spent all of the "anonymous contributions" it had received to purchase 14 television commercials opposing the reelection of Justice MARKMAN.

Thereafter, the district judge authorized a third warrant to search the Barlow firm's office for documents related to CJR; its treasurer; a Client Media Buying account; and Fieger, Fieger, Kenney & Johnson, P.C. During the search, several documents were seized, including CJR's triannual report and numerous documents with references to Geoffrey Fieger. Only after the Attorney General's investigation and the district court's discovery orders uncovered Fieger's involvement did Fieger opportunely file with the Oakland County Clerk a late independent expenditure report required by MCL 169.251, and that same day the clerk faxed the report to the DOS. The report listed that with regard to the campaign of Justice MARKMAN, Fieger made seven payments to the Barlow firm and Client Media Buy to purchase political television advertising; the five payments to the Barlow firm listed totaled $153,126, and the two payments to Client Media Buy amounted to $300,560.35, for a total of $453,686.35.

In light of the conflicting information in CJR's triannual report and Fieger's late filing of his independent campaign expenditure report, the Attorney General sought from the district court a fourth search war-

---

[3] The summary listed the address of the "anonymous donor" as 12350 Grand River in Detroit, which CJR also listed as its own mailing address.

rant directed to Comerica Bank regarding an account believed to belong to Fieger, Fieger, Kenney & Johnson, P.C. The fourth warrant reflects that on July 1, 2005, the Attorney General seized bank statements and 11 canceled checks, all of which were drawn on the account of Fieger, Fieger, Kenney & Johnson, P.C., and were signed by attorney Fieger and Nancy Fisher, who were both employed by the law firm; the corporate checks (nine payable to the Barlow firm and two to Client Media Buy) totaled $587,415.60.

The MCFA prohibits a corporation, or any "attorney, agent, or any other person acting for a . . . corporation," from "mak[ing] a contribution," MCL 169.254(1) and (2), which MCL 169.204(1) defines in relevant part as "a payment, gift, . . . expenditure, . . . advance, . . . loan, or donation of money . . . *made for the purpose of influencing the nomination or election of a candidate . . . .*" (Emphasis added.) According to MCL 169.254(4), "[a] person who knowingly violates this section is guilty of a felony . . . ."

On June 13, 2005, CJR filed an amended report of its campaign activity for the last part of 2004, which deleted all references to anonymous contributions or CJR's campaign expenditures. On July 8, 2005, the DOS mailed CJR a letter advising it of "one or more apparent error(s) or omission(s)" in the amended report, specifically the report's unexplained deletion of the previously reported contributions and expenditures approximating $457,000. The DOS notice informed CJR that its failure to respond would warrant referral of "the matter to the Attorney General" pursuant to MCL 169.216(8), which is part of the specific MCFA provision concerning filing procedures and review of "state-

ment[s] or report[s] required to be filed under [the MCFA]," MCL 169.216(1).[4]

On July 12, 2005, the district judge authorized a fifth search warrant directed to "Grace & Wild, Inc.," which the parties agree produced the anti-MARKMAN commercials. The fifth warrant permitted the Attorney General to search for and seize information "regarding the business relationship between Grace & Wild, Inc.," the Barlow firm, and Client Media Buying, including any documentation concerning the production of three specific advertisements purchased by CJR. Thereafter, the Attorney General issued investigative subpoenas to Robert Miller, who was the most recent treasurer identified on CJR filings with the DOS, and Nancy Fisher, directing them to appear at the Attorney General's office on September 26, 2005. The investigative

---

[4] In addition to MCL 169.216(8), DOS and Attorney General review of CJR's campaign statements is authorized by MCL 169.215, which generally describes the duties and powers of the Secretary of State in implementing and enforcing the MCFA. According to MCL 169.215(13),

> [w]hen a report or statement is filed under this act, *the secretary of state shall review the report or statement and may investigate an apparent violation of this act* under the rules promulgated under this act. If the secretary of state determines that there may be reason to believe a violation of this act has occurred and the procedures prescribed in subsection (10) have been complied with, *the secretary of state may refer the matter to the attorney general for the enforcement of a criminal penalty provided by this act,* or commence a hearing under subsection (11) to determine whether a civil violation of this act has occurred. [Emphasis added.]

The language of subsection 13 echoes that of subsection 10, which directs the Secretary of State to use informal conflict resolution procedures for correcting MCFA violations, but, if these fail, likewise authorizes the Secretary of State to "refer the matter to the attorney general for the enforcement of a criminal penalty provided by this act . . . ." MCL 169.215(10).

subpoena to Fisher, as reissued on October 7, 2005, instructed her to produce numerous documents, though the district judge later limited the scope of the documents that defendants requested Fisher to produce.

### III. ANALYSIS

#### A. THE LAW REQUIRES A DISSATISFIED LITIGANT TO EITHER ASK THE DISTRICT JUDGE TO RECONSIDER HIS OR HER RULING OR TO APPEAL THE JUDGE'S RULING: THE LITIGANT MAY NOT FILE ANOTHER SUIT TO GET A MORE FAVORABLE RULING

As with any investigation or litigation, if a litigant wishes to challenge a ruling by a court, the appropriate remedy is to seek a rehearing of the decision or file an appeal. Plaintiffs made no effort to mount a legitimate challenge to the Attorney General's investigation by moving to quash the search warrants, the evidence seized pursuant to the search warrants, or the investigative subpoenas. See *In re Investigation of March 1999 Riots in East Lansing*, 463 Mich 378, 381-382; 617 NW2d 310 (2000). They also skirted our well-established statutes and court rules for appealing the district court's issuance of search warrants and subpoenas and instead improperly mounted a collateral attack on the investigation by filing two original actions in the circuit court in order to thwart the investigation. On October 18, 2005, plaintiffs filed a "Verified Petition for Writ of Mandamus, Temporary Restraining Order [TRO], Preliminary Injunction and Permanent Injunction." Specifically, plaintiffs sought a TRO and a writ of mandamus directing the Secretary of State's office to withdraw its referral of CJR to the Attorney General for investigation and directing the Attorney General's office to withdraw all search warrants and investigative subpoenas and cease its investigation. Plaintiffs argued that they were entitled to an order of superintending

control over the district court to preclude its issuance of search warrants, investigative subpoenas, and orders to compel production of documents related to investigative subpoenas and any other participation in the Attorney General's investigation. In Docket No. 266264, the circuit court did not enter an order phrased in terms of superintending control over the district court, but in a November 2, 2005, TRO the circuit court clearly instructed the district court to perform certain actions in a specific manner.

Plaintiffs also filed a separate complaint for an order of superintending control over the district judge and requested that the suppression of the criminal file be lifted to allow them and the circuit court to review its contents (Docket No. 267309). The circuit judge improperly granted the relief and instructed the district court to order the Attorney General to return all financial documents "seized under color of the search warrant dated November 28, 2005," and ordered the district judge not to issue any "further search warrants or investigative subpoenas" directed toward plaintiffs.

Michigan statutes and court rules mandate the procedures for litigants to follow should they wish to appeal to the circuit court a final judgment or interim order entered by a district court. MCL 600.8342(2). Plaintiffs, however, disregarded these statutorily prescribed procedures when they filed original civil actions in a forum in which they anticipated more favorable review. This apparent forum-shopping undermines the essential integrity of the judicial system, on which litigants and the public must be able to depend.

MCL 600.8342(1) and (2) provide that interlocutory appeals from the district court shall be by application to

the circuit court for leave to appeal.[5] Because MCL 600.8342 entitles a party to appeal a district court decision to the circuit court, the following provisions of MCR 3.302, the rule that governs writs of superintending control, are relevant:

(D) Jurisdiction.

(1) The Supreme Court, the Court of Appeals, and the circuit court have jurisdiction to issue superintending control orders to lower courts or tribunals. . . .

(2) *When an appeal in* the Supreme Court, the Court of Appeals, *the circuit court,* or the recorder's court *is available, that method of review must be used. If superintending control is sought and an appeal is available, the complaint for superintending control must be dismissed.* [Emphasis added.]

In *Shepherd Montessori Ctr Milan v Ann Arbor Charter Twp*, 259 Mich App 315, 346-347; 675 NW2d 271 (2003), this Court explained:

The filing of a complaint for superintending control is not an appeal, but, rather, is an original civil action designed to order a lower court to perform a legal duty. *Barham v Workers' Compensation Appeal Bd*, 184 Mich App 121, 127; 457 NW2d 349 (1990). Superintending control is an extraordinary power that the court may invoke only when the plaintiff has no legal remedy and demonstrates that the court has failed to perform a clear legal duty. *In re Recorder's Court Bar Ass'n v Wayne Circuit Court*, 443 Mich 110, 134; 503 NW2d 885 (1993); *Czuprynski v Bay Circuit Judge*, 166 Mich App 118, 121-122; 420

---

[5] MCL 600.8342 provides, in relevant part:

(1) Appeals from the district court shall be to the circuit court in the county in which the judgment is rendered.

(2) Except as provided in subsections (4) and (5) [sic], all appeals from final judgments shall be as of right and all other appeals shall be by application.

NW2d 141 (1988). *Therefore, if a plaintiff has a legal remedy by way of appeal, the court may not exercise superintending control and must dismiss the complaint. Barham, supra at 127; MCR 3.302(D). [Emphasis added.]*

See also *In re People v Burton*, 429 Mich 133, 141; 413 NW2d 413 (1987) (citing MCR 3.302[D][2] for the proposition that "[t]he only limit as to whether a complaint for superintending control can be filed is that an appeal must be unavailable to the party seeking the order");[6] *In re Gosnell*, 234 Mich App 326, 341; 594 NW2d 90 (1999) (observing that "[w]hen an appeal is available, the complaint for an order of superintending control must be dismissed").

Because plaintiffs disregarded the available legal remedy of filing an appeal in the circuit court of the district court's issuance of search warrants and investigative subpoenas, instead commencing original civil actions seeking writs of mandamus[7] and superintending control orders over the district court, the circuit court was required to dismiss and, thus, should have summarily dismissed the actions as mandated by the plain language of MCR 3.302(D)(2).[8] Instead, the circuit court effectively halted the Attorney General's investigation

---

[6] *Burton* was superseded by statute because, at the time the case was decided, a prosecutor could not appeal an order granting a new trial. *In re Gosnell*, 234 Mich App 326, 341 n 9; 594 NW2d 90 (1999), citing *Schomaker v Armour, Inc*, 217 Mich App 219, 222-225; 550 NW2d 863 (1996).

[7] According to MCR 3.302(C), "[a] superintending control order replaces ... the writ of mandamus when directed to a lower court or tribunal."

[8] We further note that the provisions of the circuit court's grant of injunctive relief in the form of a TRO violate the clear and unambiguous terms of MCR 3.310(E), which provides: "An injunction or temporary restraining order may not be granted in one action to stay proceedings in another action pending in another court if the relief requested could be sought in the other pending action."

and collaterally usurped the authority of the district court by improperly acquiescing to plaintiffs' requests. Notwithstanding that the Attorney General is constitutionally and statutorily bound to investigate campaign finance violations, and that the district court is charged with overseeing the investigatory process, the circuit court weakened the Attorney General's executive authority to investigate and pursue potential violations of Michigan law. We cannot permit any litigant to violate statutory and procedural rules by bypassing the normal appeal process. The rule of law must be observed, and everyone must play by the same rules. To hold otherwise would not only undermine our judicial system and encourage forum-shopping, it would also violate the fundamental separation of powers principle.

### B. THE ATTORNEY GENERAL PROPERLY CONDUCTED THE FELONY INVESTIGATION REGARDING FIEGER'S ALLEGED VIOLATIONS OF THE MCFA AND THE CIRCUIT COURT HAD NO AUTHORITY TO THWART THE ATTORNEY GENERAL'S CRIMINAL INVESTIGATION

Were we to conclude that plaintiffs' claims were properly brought, and clearly they were not, we would nonetheless hold that the circuit court's restraint of the Attorney General's investigation violated the separation of powers principle, Const 1963, art 3, § 2. Though plaintiffs allege that the scope and manner of the Attorney General's investigation constituted an abuse of authority, there is simply no support in the record for this contention. On the contrary, plaintiffs had no basis to thwart the Attorney General's investigation through restraining orders issued in a collateral circuit court action.

"Whether a violation of the separation of powers doctrine has occurred is a question of law that this Court reviews de novo." *Harbor Tel 2103, LLC v Oak-*

*land Co Bd of Comm'rs*, 253 Mich App 40, 50; 654
NW2d 633 (2002). To the extent that analysis of this
issue also requires statutory construction, this Court
likewise "review[s] de novo the legal questions involved
in statutory interpretation." *Id.* at 51. The separation of
powers principle is embodied in article 3, § 2 of the
Michigan Constitution of 1963: "The powers of govern-
ment are divided into three branches: legislative, execu-
tive and judicial. No person exercising powers of one
branch shall exercise powers properly belonging to
another branch except as expressly provided in this
constitution."

"By separating the powers of government, the fram-
ers of the Michigan Constitution sought to disperse
governmental power and thereby to limit its exercise."
*Nat'l Wildlife Federation v Cleveland Cliffs Iron Co*, 471
Mich 608, 613; 684 NW2d 800 (2004). As our Supreme
Court reiterated in *Lee v Macomb Co Bd of Comm'rs*,
464 Mich 726, 737-738; 629 NW2d 900 (2001), quoting
*People ex rel Sutherland v Governor*, 29 Mich 320,
324-325 (1874):

> "Our government is one whose powers have been care-
> fully apportioned between three distinct departments,
> which emanate alike from the people, have their powers
> alike limited and defined by the constitution, are of equal
> dignity, and within their respective spheres of action
> equally independent. One makes the laws, another applies
> the laws in contested cases, while the third must see that
> the laws are executed. This division is accepted as a
> necessity in all free governments, and the very apportion-
> ment of power to one department is understood to be a
> prohibition of its exercise by either of the others. The
> executive is forbidden to exercise judicial power by the
> same implication which forbids the courts to take upon
> themselves his duties."

Provisions relating to the office of the Attorney General appear in article 5 of the Michigan Constitution, which delineates the executive branch of government in Michigan. Article 5, § 3 states that "[t]he single executives heading principal departments shall include a secretary of state, a state treasurer and an attorney general," and article 5, § 9 provides that the "[s]ingle executives heading principal departments . . . *shall* . . . *perform duties prescribed by law.*" (Emphasis added.) "The office of the attorney general enjoys a wide range of powers, derived from both the common law and, later, statutory enactments." *Michigan Beer & Wine Wholesalers Ass'n v Attorney General*, 142 Mich App 294, 300; 370 NW2d 328 (1985). "The most basic purpose of [the Attorney General's] office is to litigate matters on behalf of the people of the state. Accordingly, it is widely acknowledged that Michigan's Attorney General has broad authority to bring actions that are in the interest of the state of Michigan." *In re Certified Question (Wayne Co v Phillip Morris, Inc)*, 465 Mich 537, 543; 638 NW2d 409 (2002), citing MCL 14.28.[9]

---

[9] Pursuant to MCL 14.28,

> [t]he attorney general shall prosecute and defend all actions in the supreme court, in which the state shall be interested, or a party; he may, in his discretion, designate one of the assistant attorneys general to be known as the solicitor general, who, under his direction, shall have charge of such causes in the supreme court and shall perform such other duties as may be assigned to him; and the attorney general shall also, when requested by the governor, or either branch of the legislature, and may, when in his own judgment the interests of the state require it, intervene in and appear for the people of this state in any other court or tribunal, in any cause or matter, civil or criminal, in which the people of this state may be a party or interested.

"In determining what constitutes a state interest for the purpose of deciding whether to initiate litigation, the Attorney General has broad

As this Court further observed in *People v Karalla*, 35 Mich App 541, 544; 192 NW2d 676 (1971), "the Attorney General possesses all the powers of a prosecuting attorney unless that power has been specifically withdrawn by the Legislature." Pursuant to MCL 49.153, prosecuting attorneys in Michigan possess broad discretion to investigate criminal wrongdoing, determine which applicable charges a defendant should face, and initiate and conduct criminal proceedings. *People v O'Shea*, 149 Mich App 268, 276; 385 NW2d 768 (1986); *Bloss v Williams*, 15 Mich App 228, 233-235; 166 NW2d 520 (1968).

Michigan courts recognize that although the judiciary generally may not second-guess executive-branch decisions, under certain circumstances the judiciary does possess limited authority to review discretionary actions taken by the executive branch. "A circuit judge does not enjoy supervisory power over a prosecuting attorney. . . . He may not properly substitute his judgment for that of the magistrate or prosecuting attorney as if he were reviewing the magistrate's decision *de novo* or acting in a supervisory capacity with respect to the prosecuting attorney." *Genesee Prosecutor v Genesee Circuit Judge*, 391 Mich 115, 121; 215 NW2d 145 (1974). "For the judiciary to claim power to control the institution and conduct of prosecutions would be an intrusion on the power of the executive branch of government and a violation of the constitutional separation of powers. Const 1963, art 3, § 2." *Genesee Prosecutor v Genesee Circuit Judge*, 386 Mich 672, 684; 194 NW2d 693 (1972). Accordingly, "unless there is some reason to conclude that the prosecution's acts

statutory discretion . . . . [T]he courts should accord substantial deference to the Attorney General's decision that a matter constitutes a state interest." *In re Certified Question, supra*, 465 Mich 547.

were unconstitutional, illegal, or ultra vires, the prosecutor's decision whether to proceed with a case is exempt from judicial review." *People v Jones*, 252 Mich App 1, 7; 650 NW2d 717 (2002). See also *People v Williams*, 186 Mich App 606, 610-611; 465 NW2d 376 (1990); *People v Morrow*, 214 Mich App 158, 161; 542 NW2d 324 (1995).

The circuit court's November 2, 2005, TRO plainly purported to constrain the Attorney General's authority to investigate or pursue potential violations of Michigan law. See *Michigan State Chiropractic Ass'n v Kelley*, 79 Mich App 789, 791; 262 NW2d 676 (1977). While a circuit court may consider allegations that the Attorney General has abused his authority by pursuing an illegal and unconstitutional investigation, record evidence establishes that the Attorney General's investigation here fully comported with the specific statutory provisions governing the investigation. For these reasons, there was no abuse of authority in the Attorney General's conducting, by means of search warrants, the investigation of the Fieger firm's potential violation of MCL 169.254. Michigan statutes specifically authorize the Attorney General to seek and obtain search warrants to further his investigation into a potential felony violation of the MCFA. See MCL 780.651 *et seq.*; *Karalla, supra*, 35 Mich App 543-544. The record reflects that, when he requested each warrant in this case, the Attorney General had a reasonable basis to believe that the search would yield evidence of a violation of the MCFA. MCL 780.652(d); *People v Beuschlein*, 245 Mich App 744, 750; 630 NW2d 921 (2001).[10] Again, the record here reveals no abuse of authority by the Attorney

---

[10] The search-warrant statutes also require the confidentiality of the affidavits supporting search warrants for at least 56 days. MCL 780.651(7) and (8).

General, who properly received the DOS referral regarding CJR's violation of MCL 169.233(3) and who thereafter properly investigated pursuant to his broad authority whether the Barlow firm or the Fieger firm committed a felony violation of the MCFA. Accordingly, the circuit court's interference with and restraint of the Attorney General's investigation constituted a clear violation of the separation of powers doctrine.[11]

The import of our holding must be clear to these litigants and to those on the bench and in the bar. It is, quite simply, impermissible and an abuse of judicial power to thwart the Attorney General's executive authority to properly investigate and pursue potential criminal conduct. Moreover, it is equally impermissible for a litigant to engage in forum-shopping to obstruct warrants and subpoenas duly issued by a district court by filing a separate suit rather than appealing unfavorable rulings.[12] And any court that permits this circumvention of the rule of law abuses its judicial power.

In sum, we hold that plaintiffs improperly circumvented the appellate process and engaged in a variant of forum-shopping to thwart the Secretary of State and the Attorney General from conducting a proper felony investigation. We further hold that the circuit judge was

[11] Plaintiffs question the Attorney General's allegedly political motives in pursuing the investigation, again without record support, but in the absence of some illegality or abuse of authority by the Attorney General, his alleged motives do not constitute a valid subject for judicial review. See *State Racing Comm'r v Wayne Circuit Judge*, 377 Mich 31, 36; 138 NW2d 764 (1966).

[12] Fieger has admittedly engaged in other attempts to game the judicial system in order to improve his odds for a more favorable outcome. See *In re Fieger*, unpublished opinion of the United States Court of Appeals for the Sixth Circuit, issued September 10, 1999 (Docket No. 97-1359); 1999 WL 717991, in which he was disciplined after he admitted that he filed 13 identical complaints in the same federal district court and then dismissed all but one of them in order to ensure assignment to his preferred judge.

obligated, and failed in this obligation, to dismiss plaintiffs' civil lawsuits and that, in exercising improper superintending control over the district court, overstepped his authority, improperly interfered with the district judge's case, and, by thwarting a proper, statutorily mandated investigation by the Attorney General, violated the separation of powers doctrine. Accordingly, we reverse the circuit judge's rulings.

Reversed.