KALAMAZOO POLICE SUPERVISORS' ASSOCIATION v CITY OF
KALAMAZOO

Docket No. 64699. Submitted August 2, 1983, at Grand Rapids.—
Decided November 21, 1983.

The Kalamazoo Police Supervisors' Association, the International
Association of Fire Fighters, and the Kalamazoo Police Officers'
Association voluntarily entered into negotiations with the City
of Kalamazoo pursuant to the public employment relations act
concerning the terms and conditions of employment that would
apply to them if the city decided to eliminate its existing Fire
Department and Police Department and establish a Depart-
ment of Public Safety. It was understood from the beginning of
the negotiations that the city was not considering maintaining
separate police and fire departments or divisions with one
public safety director overseeing the operations of both, but
rather an integrated public safety department in which public
safety officers would perform both fire fighting and law enforce-
ment functions. Pursuant to the negotiated and ratified collec-
tive-bargaining agreements, each police officer and fire fighter,
in accordance with seniority, may elect to be cross-trained and
become a public safety officer. Those employees who elect not to
be cross-trained will remain in their traditional fire fighter or
police officer functions. Specifically, each fire fighter who does
not become a public safety officer will remain on the current
24-hour duty cycle that complied with the fire department
hours of labor act. Pursuant to the hours of work provision
negotiated for public safety officers, public safety officers will be
scheduled for 12-hour work days and an average 42-hour work

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 22 Am Jur 2d, Declaratory Judgments §§ 6, 10, 11.
[2] 20 Am Jur 2d, Courts § 86.
[3] 73 Am Jur 2d, Statutes §§ 145, 146.
[4, 6] 48A Am Jur 2d, Labor and Labor Relations §§ 2637, 2650.
[5] 48A Am Jur 2d, Labor and Labor Relations § 1764 et seq.
[6] 48 Am Jur 2d, Labor and Labor Relations § 1001.
   48A Am Jur 2d, Labor and Labor Relations §§ 1770, 1790, 1791.
   Subjects of mandatory collective bargaining under Federal Labor
      Relations Act. 12 ALR2d 265.

week. The unions and the city agreed to seek a declaratory judgment from the Kalamazoo County Circuit Court regarding the legality of the negotiated hours of work for public safety officers. The circuit court, Charles H. Mullen, J., held that the hours of labor act is applicable to the facts of this case and that the negotiated hours of work provision is in violation of the act. The city appealed. *Held:*

1. The case presented a case or controversy over which the court may exercise jurisdiction. For purposes of maintaining a declaratory judgment action, a case or actual controversy exists where the parties seek to determine the applicability of a penal statute to the performance of their business or trade.

2. The fire department hours of labor law does not apply to public safety officers who perform both fire fighting and police functions for a fully integrated Department of Public Safety.

3. The public employment relations act is the dominant law regulating public employment labor relations. The hours of work for fire fighters is a mandatory subject of bargaining under the public employment relations act.

Reversed.

1. DECLARATORY JUDGMENTS — CASE OR CONTROVERSY — PENAL STATUTES.

For purposes of maintaining a declaratory judgment action, a case or actual controversy exists where the parties seek to determine the applicability of a penal statute to the performance of their business or trade.

2. DECLARATORY JUDGMENTS — COURT RULES.

The declaratory judgment rule, by which circuit courts are vested with the power to declare the legal rights of parties in cases of "actual controversy", was intended to be liberally construed to provide a broad, flexible remedy to increase access to the courts (GCR 1963, 521.1).

3. STATUTES — JUDICIAL CONSTRUCTION — LEGISLATIVE INTENT.

The legislative intent to be given effect in construing a statute is that of the Legislature at the time of the original passage of the act.

4. LABOR RELATIONS — PUBLIC SAFETY DEPARTMENTS — FIRE DEPARTMENT HOURS OF LABOR ACT.

The fire department hours of labor law is penal and must be strictly construed, including the term "fire department"; the fire department hours of labor law does not apply to public safety officers who perform both fire fighting and police func-

tions for a fully integrated Department of Public Safety (MCL 123.841 *et seq.;* MSA 5.3331 *et seq.).*

5. LABOR RELATIONS — PUBLIC EMPLOYMENT RELATIONS ACT.
   The public employment relations act is the dominant law regulating public employment labor relations (Const 1963, art 4, § 48; MCL 423.201 *et seq.;* MSA 17.455[1] *et seq.).*

6. LABOR RELATIONS — FIRE FIGHTERS — HOURS OF WORK.
   The hours of work for fire fighters is a mandatory subject of bargaining under the public employment relations act (MCL 423.215; MSA 17.455[15]).

*Brown, Colman & DeMent, P.C.* (by *Loyal A. Eldridge* and *Kevin M. McCarthy),* for defendant.

Before: V. J. BRENNAN, P.J., and SHEPHERD and E. A. QUINNELL,* JJ.

SHEPHERD, J. The International Association of Fire Fighters, Kalamazoo Police Supervisors' Association, and the Kalamazoo Police Officers' Association voluntarily entered into negotiations with the City of Kalamazoo, pursuant to the public employment relations act (PERA), concerning the terms and conditions of employment that would apply to them if the city decided to eliminate its existing Fire Department and Police Department and establish a Department of Public Safety. It was understood from the beginning of the negotiations that the city was not considering maintaining separate police and fire departments or divisions with one public safety director overseeing the operations of both, but rather an integrated public safety department in which public safety officers would perform both fire fighting and law enforcement functions.

Pursuant to the negotiated and ratified collective-bargaining agreements, each police officer and

* Circuit judge, sitting on the Court of Appeals by assignment.

fire fighter, in accordance with seniority, may elect to be cross-trained and become a public safety officer. Those employees who elect not to be cross-trained will remain in their traditional fire fighter or police officer functions. Specifically, each fire fighter who does not become a public safety officer will remain on the current 24-hour duty cycle that clearly complies with the fire department hours of labor act. MCL 123.841; MSA 5.3331.

At issue here is the hours of work provision negotiated for public safety officers. Pursuant to this provision, public safety officers will be scheduled for 12-hour work days and an average 42-hour work week.

Following ratification of the agreements by a substantial majority of the membership of each union, each employee was asked to sign a notice of intent to enter the public safety program. Of specific interest is the fact that almost half of the employees who responded in the Kalamazoo Fire Department stated that it was their intention to become public safety officers. The notices of intent were executed with full knowledge of the negotiated 42-hour work week and levels of compensation established for public safety officers.

The unions and the city agreed to seek a declaratory judgment from the Kalamazoo County Circuit Court regarding the legality of the negotiated hours of work for public safety officers. The circuit court held that the hours of labor act is applicable to the facts of this case and that the negotiated hours of work provision is in violation of the act. From this decision all parties have joined in this appeal.

The first issue here involved is whether there exists a case or controversy such that the court may exercise its jurisdiction over this declaratory

judgment action. GCR 1963, 521.1 grants circuit courts the power to declare the rights and other legal relations of any interested party seeking a declaratory judgment. It is the general rule of this state that a case or actual controversy exists where the parties seek to determine the applicability of a penal statute to the performance of their business or trade.

Because GCR 1963, 521 was intended to provide the broadest type of declaratory judgment procedure possible and is remedial, it is to be liberally construed in order to make courts more accessible to interested parties. *Comm'r of Revenue v Grand Trunk W R Co,* 326 Mich 371; 40 NW2d 188 (1949); *Bloomfield Hills v Ziegelman,* 110 Mich App 530; 313 NW2d 137 (1981), *rev'd on other grounds* 413 Mich 911 (1982); Official Committee Comment to GCR 1963, 521.

In *Strager v Wayne County Prosecuting Attorney,* 10 Mich App 166, 170-171; 159 NW2d 175 (1968), it was held that a declaratory judgment is a proper remedy to test the validity of a criminal statute where that statute affects the trade or business of the interested parties.

The "trades or businesses" of all parties in this action are affected by the act. As to the defendant, it is affected because it may be restricted in the hours it may schedule public safety officers to work and may be forced to hire additional employees if a new hours schedule must be implemented. As for the plaintiffs, the "trades or businesses" of their individual members are directly affected by the court's determination of whether the act applies to the Kalamazoo Public Safety Department in that this decision will have an immediate impact upon their hours of work.

Further, *Strager,* p 171, states that affording

businessmen declaratory relief in such situations without having first to be arrested is one of the functions of the declaratory judgment procedure. Defendant's City Manager and City Commissioners could be subject to fines and/or imprisonment should defendant be found to be in violation of the act. Affording defendant some guidance so as to avoid this situation is, according to *Strager,* one of the functions of the declaratory judgment procedure.

Michigan courts have consistently upheld the right to seek declaratory relief where interested parties have sought the guidance of courts prior to there being an actual violation of a statute. See *Grocer's Dairy Co v Dep't of Agriculture Director,* 377 Mich 71; 138 NW2d 767 (1966); *Arlan's Department Stores, Inc v Attorney General,* 374 Mich 70; 130 NW2d 892 (1964); *Levy v Pontiac,* 331 Mich 100; 49 NW2d 80 (1951); *Carolene Products Co v Thomson,* 276 Mich 172; 267 NW 608 (1936); *National Amusement Co v Johnson,* 270 Mich 613; 259 NW 342 (1935). The fact that no party is yet in violation of the act does not deny the parties the right to declaratory relief. One test of the right to institute such proceedings is the necessity of present adjudication as a guide for interested parties' future conduct in order to preserve their legal rights. *Bane v Pontiac Twp,* 343 Mich 481; 72 NW2d 134 (1955); *Village of Breedsville v Columbia Twp,* 312 Mich 47; 19 NW2d 482 (1945); *Updegraff v Attorney General,* 298 Mich 48; 298 NW 400 (1941); *Rott v Standard Accident Ins Co,* 299 Mich 384; 300 NW 134 (1941).

This is precisely why the parties seek declaratory relief; they seek guidance from this Court as to whether their proposed hours of work schedule would run afoul of the act.

As a further basis for holding that there is a case or controversy ripe for decision, we point out that the unions are willing at this time to have the agreement enforced, whereas, the city has taken the position that it will not enforce the agreement unless a court passes upon its validity. The parties are therefore in disagreement on this vital point even though both parties wish to have the court reach the same result.

The next question relates to whether the fire department hours of labor act applies to the Kalamazoo public safety department and to the hours of work established for public safety officers under the proposed collective-bargaining agreement. Section 1 of the hours of labor act provides as follows:

"It shall be unlawful for any municipality, or any officer or employee thereof, in municipalities which maintain or may hereafter maintain an organized paid or part-paid fire department, *to require any person in the employ of the Fire Department* who is engaged in fire fighting or subject to the hazards thereof to be on duty in such employment more than 24 hours, or to be off duty less than 24 consecutive hours out of any 48 hour period. All persons in the employ of any organized paid or part-paid fire department who are engaged in fire fighting or subject to the hazards thereof shall be entitled to an additional 24 consecutive hours off duty in every 12 day period, beginning July 1, 1966, thereby requiring firemen to work not more than an average of 63 hours per week, and effective July 1, 1967, an additional 24 consecutive hours off duty in every 6 day period, thereby requiring firemen to work not more than an average of 56 hours per week." (Emphasis supplied.) MCL 123.841; MSA 5.3331.

This act was enacted in 1925, at a time when the concept of a public safety department was nonexistent. In 1947, this provision was amended to include the phrase "who is engaged in fire

fighting or subject to the hazards thereof", which amendment was clearly intended to limit or restrict the reach of this provision, in response to an opinion of the Attorney General stating that the act as then written would apply to dispatchers and clerical personnel employed by fire departments, as well as to fire fighters. See OAG, 1943-1944, No 24485, p 76 (September 3, 1942).

The hours of work provision here at issue does not violate the above-quoted statute because the hours of labor act only applies to traditional fire departments, not to the hours of work of public safety officers in fully integrated public safety departments.

The hours of labor act is restricted in scope to municipalities maintaining "an organized paid or part-paid fire department" and prohibits such municipalities from requiring "any person *in the employ of the fire department*" from working hours in excess of those prescribed in the statute. In 1925, when this statute was enacted, there was no entity such as a public safety department. Cities maintained separate police and fire departments whose functions were not intertwined. The chain of command in each department was kept completely separate, one being headed by a fire chief, the other by a police chief. Fire fighters did not perform police functions and police officers did not engage in fire fighting activities. The concept of a unified police/fire department was unheard of at the time.

In interpreting and applying the statute, the primary object of the court must be to give effect to the legislative intent behind the statute. *Moore v Dep't of Military Affairs,* 398 Mich 324, 327; 247 NW2d 801 (1976); *Lee v Employment Security Comm,* 346 Mich 171; 78 NW2d 309 (1956); *DAIIE*

*v Comm'r of Ins*, 86 Mich App 473, 479-480; 272 NW2d 689 (1978). The legislative intent to be given effect is that of the Legislature at the time of the original passage of the act. *Detroit Edison Co v Dep't of Revenue*, 320 Mich 506; 31 NW2d 809 (1948); *Harper v Progressive Casualty Ins Co*, 79 Mich App 764, 768; 263 NW2d 1 (1977).

The intent of the Michigan Legislature in passing this act in 1925 could have been no more than to have it apply to what are now considered traditional fire departments since such departments were all that existed at the time. Since there were no public safety departments, the hours of labor act certainly was not intended to regulate the work schedules of persons performing both police and fire functions. The statute as originally drafted, thus, must be held to apply only to traditional fire departments.

This is particularly true because the hours of labor act is a penal statute, providing at MCL 123.843; MSA 5.3333, that any person violating the law is guilty of a misdemeanor punishable by fine and/or imprisonment. *People v Crucible Steel Co of America*, 151 Mich 618, 619; 115 NW 705 (1908). As such, it must be strictly construed and, specifically, the term "fire department" must be strictly construed and applied. *Arlan's Dep't Stores, Inc v Attorney General, supra; Club Holding Co v Flint Citizens Loan & Investment Co*, 272 Mich 66, 72; 261 NW 133 (1935); *Goetz v Black*, 256 Mich 564, 573; 240 NW 94 (1932). Its meaning cannot be expanded to cover a public safety department where separate police and fire divisions are not maintained.

In 1947, the act was amended so as to limit its application only to persons in the employ of a fire department engaged in fire fighting or subject to

the hazards thereof. This was clearly meant to narrow the application of the statute in response to an attorney general's opinion (OAG, 1943-1944, No 24485, p 76 [September 3, 1942]), which indicated that the act as then written would apply not only to fire fighting personnel but also to dispatchers and clerical employees of fire departments. This language in the act, therefore, was not intended to and does not expand the application of the statute to all persons engaged in fire fighting activities but narrows the application of the statute to persons engaged in fire fighting activities who are employed in traditional fire departments.

OAG, 1965, No 4429, pp 48, 50 (March 23, 1965) states that the hours of labor act would apply to municipal employees engaged in fire fighting activities even though the fire fighting services are incorporated into a department known by a name other than "fire department or integrated with the police department and called a department of public safety, or police-fire department". For the reasons stated herein, the scope of this opinion of the Attorney General is narrower than at first appears. A careful reading of OAG, 1965, No 4429 makes clear that the Attorney General's concern was to avoid the mere renaming of a fire department for the purpose of evading the obligations of the hours of labor act. Such is not the case here, where the consolidation of the police and fire departments resulted in public safety officers performing both functions and greater protection to the citizenry, and was the result of a collectively bargained change in terms and conditions of employment.

Further, it must be noted that an opinion of the Attorney General does not have any precedential effect. *Reinelt v Public School Employees' Retire-*

*ment Bd,* 87 Mich App 769, 774; 276 NW2d 858 (1979).

The provisions of the hours of labor act have been applied to a municipal public safety department in only one case, *Flynn v City of Fraser,* 45 Mich App 346; 206 NW2d 448 (1973). In *Flynn,* the act was applied only to employees assigned to the fire protection division of the city's department of public safety. *Flynn,* p 348. Because these employees did not perform police functions, the situation in *Flynn* is distinguishable from the instant case, which involves public safety officers.

The holding in *Flynn* is therefore consistent with the interpretation of the hours of labor act set forth above, that its application is limited only to employees of traditional fire departments. The employees in *Flynn* to whom the hours of labor act was applied were employed by the fire division and performed solely fire fighting functions. This is much different from the situation in this case because the Kalamazoo public safety officers perform both police and fire functions and, further, are not employed by a separate fire division but are employed by a fully integrated department of public safety.

For the above-stated reasons, the hours of labor act does not apply to public safety officers employed in a fully integrated public safety department where such employees perform both police and fire fighting functions.

The final issue in this case relates to the relationship between the above-cited hours of labor act and the statute which granted public employees the right to form and join labor organizations and to negotiate in good faith with public employers regarding "wages, hours, and other terms and conditions of employment". MCL 423.215; MSA

17.455(15). This act, commonly known as PERA, changed the framework of labor relations in this state since, prior to its enactment, public employees did not have the right to organize or to bargain collectively with respect to their working conditions.

In *Local 1383, International Ass'n of Fire Fighters-AFL-CIO v City of Warren,* 411 Mich 642; 311 NW2d 702 (1981), the Michigan Supreme Court held that PERA prevails over conflicting legislation, municipal charters, and ordinances, and that PERA must be regarded as the dominant law regarding labor relations in public employment. *City of Warren* decided the issue of whether a provision in a collective-bargaining agreement concerning promotions, entered into under PERA, is valid and enforceable when it conflicts with provisions of a city charter and the fire and police civil service act. MCL 38.501 *et seq.;* MSA 5.3351 *et seq.;* 1935 PA 78.

The Court's holding in *City of Warren* was that the provision in the collective-bargaining agreement that conflicted with the fire and police civil service act was valid because PERA is the dominant law in the field of public sector labor relations. This holding applies in the instant case. Michigan courts have repeatedly held that, if there is a conflict between PERA and another statute, charter provision or constitutional provision affecting mandatory bargaining subjects, the provisions of PERA and Const 1963, art 4, § 48, must dominate, permitting the public employer and employees the freedom to collectively bargain as contemplated by PERA. *Central Michigan University Faculty Ass'n v Central Michigan University,* 404 Mich 268; 273 NW2d 21 (1978); *Pontiac Police Officers' Ass'n v Pontiac,* 397 Mich 674; 246

NW2d 831 (1976); *Rockwell v Crestwood School Dist Bd of Ed,* 393 Mich 616; 227 NW2d 736 (1975); *Wayne County Civil Service Comm v Bd of Supervisors,* 384 Mich 363; 184 NW2d 201 (1971). In *Central Michigan University,* p 279, the Supreme Court succinctly stated:

"PERA was intended by the Legislature to supersede conflicting laws * * *."

The basis for the Court's holding in *City of Warren,* as well as in other decisions involving the dominance of PERA, was that the Legislature, in enacting the conflicting statute prior to the enactment of PERA, did not have in its mind the concept of public employee collective bargaining. See also *Wayne County Civil Service Comm, supra; Rockwell, supra.* The same principle that was applied to the fire and police civil service act in *City of Warren,* the county civil service act (MCL 38.401 *et seq.;* MSA 5.1191[1] *et seq.;* 1941 PA 370) in *Wayne County Civil Service Comm,* and the teachers tenure act (MCL 38.71 *et seq.;* MSA 15.1971 *et seq.;* 1937 PA 4) in *Rockwell,* applies with equal force in the instant case. In 1925, when the hours of labor act was enacted, the Legislature could not possibly have contemplated collective bargaining for fire department employees.

PERA must be viewed as the dominant law regulating public employment relations because "[t]he 'free administration' of collective bargaining can only be achieved when all subjects of bargaining are included in the collective-negotiation process". *City of Warren,* p 663. The hours of work for fire fighters is clearly a mandatory subject of bargaining under PERA. MCL 423.215; MSA 17.455(15).

For the above reasons we hold that the collective-bargaining agreement negotiated by the parties is not in violation of the hours of labor act.

Reversed. No costs, a public question being involved.