*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

WATERFORD REDEMPTION CENTER, LLC, and
BURTON REDEMPTION CENTER, LLC,

        Plaintiffs-Appellants,

v

GAMING CONTROL BOARD EXECUTIVE
DIRECTOR and ATTORNEY GENERAL,

        Defendants-Appellees.

UNPUBLISHED
May 27, 2021

No. 352176
Court of Claims
LC No. 19-000133-MZ

---

SGC ACCOUNTING, LLC,

        Plaintiff-Appellant,

v

GAMING CONTROL BOARD EXECUTIVE
DIRECTOR and ATTORNEY GENERAL,

        Defendants-Appellees.

No. 352177
Court of Claims
LC No. 19-000146-MZ

---

Before: SHAPIRO, P.J., and JANSEN and BECKERING, JJ.

PER CURIAM.

In these consolidated appeals involving the declaratory judgment rule, plaintiffs Waterford Redemption Center, LLC, and Burton Redemption Center, LLC, in Docket No. 352176, appeal by right the Court of Claims opinion and order granting summary disposition under MCR 2.116(C)(8) (failure to state a claim) in favor of defendants, the Executive Director of the Michigan Gaming Control Board (MGCB) and the Attorney General; and, in Docket No. 352177, plaintiff SGC Accounting, LLC, appeals by right the Court of Claims opinion and order granting the same relief

-1-

to defendants. On appeal, plaintiffs argue that the Court of Claims erred by granting defendants' motions for summary disposition and abused its discretion by denying plaintiffs' requests for declaratory relief. We conclude that the Court of Claims properly determined that a declaratory judgment was not appropriate under the circumstances of this case. Moreover, in regard to their claim for injunctive relief, plaintiffs failed to establish error requiring reversal, given that an injunction would constrain the Attorney General from exercising her executive powers in violation of separation-of-powers principles. Accordingly, we affirm the dismissal of plaintiffs' complaints.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff SGC owned and operated the Atlantis Café and Monte Carlo Café, of Davison and Lapeer, Michigan, respectively. Plaintiff Waterford owned and operated Jackpotts I, while plaintiff Burton owned and operated Jackpotts II, of Waterford and Burton, Michigan, respectively. Plaintiffs believed that these establishments were "redemption game centers" that provided games pursuant to the requirements of MCL 750.310b, which exempted "skill" games from the general prohibition against gambling. MCL 750.310b(2) defines "redemption games" as:

> [A] single player or multiplayer mechanical, electronic, or manual amusement device involving a game, the object of which is throwing, rolling, bowling, shooting, placing, propelling, or stopping a ball or other object into, upon, or against a hole or other target. Redemption game does not include either of the following:
>
> (a) A game such as roulette, beano, cards, dice, wheel of fortune, video poker, a slot machine, or another game in which winning depends primarily upon fortuitous or accidental circumstances beyond the control of the player.
>
> (b) A game that includes a mechanical or physical device that directly or indirectly impairs or thwarts the skill of the player.

Further, the statute provides that the prohibition against gambling does not apply to such redemption games if the following conditions are met:

> (a) The outcome of the game is determined through the application of an element of skill by the player.
>
> (b) The award of the prize is based upon the player's achieving the object of the game or otherwise upon the player's score.
>
> (c) Only noncash prizes, toys, novelties, or coupons or other representations of value redeemable for noncash prizes, toys, or novelties are awarded. A gift card may be awarded under this subdivision if all of the following apply:
>
> (*i*) The gift card is usable only at a retailer or an affiliated group of retailers.
>
> (*ii*) The gift card is issued in a specified amount.

(*iii*) The gift card is redeemable only for goods and services available from the retailer or retailers and not for cash.

(*iv*) Information on the gift card may not be altered with the use of a personal identification number.

(d) The wholesale value of a prize, toy, or novelty awarded for the successful single play of a game is not more than $3.75.

(e) The redemption value of coupons or other representations of value awarded for the successful single play of a game does not exceed 15 times the amount charged for a single play of the game or a $3.75-per-play average, whichever is less. . . .  [MCL 750.310b(1).]

According to plaintiffs, they established their operations in compliance with MCL 750.310b because they selected games where the outcome was determined by skill, not chance; the award was based on the player achieving the object of the game or otherwise the player's score; and, the players only received gift cards as an award.  To this end, plaintiffs had consulted with various industry experts regarding the nature of the games, who confirmed in their evaluations that the games were "skill" games.  Additionally, according to plaintiffs, TS Trading, the maker of some of the games, had previously made a presentation of the games to the Alcohol & Gambling Enforcement Division of the Michigan Department of Attorney General, which raised no objection.

Plaintiffs operated the games at their businesses for several years.  Then, in the summer of 2019, each plaintiff received a letter from the Executive Director of the MGCB in relation to the game centers.  The near identical letters noted that the MGCB had confirmed that plaintiffs' game centers were engaged in "illegal gambling."  In particular, the MGCB's investigations had revealed that the businesses had a pattern of "receiving money from customers in exchange for chances to receive gift cards by playing computer-based casino-style games."  The letters ordered plaintiffs to cease and desist their "ongoing practice of allowing customers to play casino-style games and awarding gift cards to successful players," or face possible criminal felony charges or civil action. The letters then outlined the provisions of the Michigan Gaming Act and Penal Code that the illegal activity violated, including, the Gaming Act's prohibition against operating an unlicensed gambling operation, MCL 432.218(1)(a), and the Penal Code's prohibition against accepting money for purposes of gambling, MCL 750.301, occupying a building used for gambling, MCL 750.302, maintaining a gaming room, MCL 750.303, and using a computer to commit a crime, MCL 752.796.  The letters ended by directing that "[i]f this activity fails to cease within 14 days of your receipt of this letter, we will refer the matter to the Michigan Attorney General to initiate appropriate legal action."

Plaintiffs ceased their operations.  Shortly after, they filed separate but substantially the same complaints in the Court of Claims seeking, in part, declaratory and injunctive relief. Plaintiffs sought a declaration that their gaming activities were permitted under MCL 750.310b, as well as an injunction enjoining the MGCB from referring plaintiffs' gaming businesses to the Attorney General so long as plaintiffs complied with MCL 750.310b. Nowhere in their complaints did plaintiffs challenge the validity of MCL 750.310b or the construction of that provision.

Defendants responded by moving for summary disposition under MCR 2.116(C)(8) and (10) (no genuine issue of material fact) in each case. The Court of Claims ordered supplemental briefing in each case. In particular, the court noted that while Michigan jurisprudence allows a party to challenge the validity of a criminal statute before initiation of criminal proceedings, the parties had not addressed whether declaratory relief was available to a party that challenges a criminal statute on the basis that it does not apply to an existing set of facts absent a claim of statutory invalidity. Accordingly, the court ordered the parties to brief the following issue:

> whether declaratory relief can issue to determine whether plaintiff[s'] past conduct violated statutory prohibitions against gambling, and whether, in light of that question, the Court can issue declaratory relief pertaining to plaintiff[s'] future ability to operate the same machines in accordance with the law.

In their supplemental brief in each case, defendants, relying on authority from other jurisdictions, asserted that summary disposition should be granted because absent a claim of statutory invalidity, declaratory relief is not available. Plaintiffs countered by pointing out that declaratory relief had been issued when matters involved criminal exposure. Plaintiffs posited that declaratory relief was proper because no adequate remedy at law existed and the relief was necessary to guide their future conduct.

The Court of Claims granted defendants' motions for summary disposition in each case under MCR 2.116(C)(8). The court first considered plaintiffs' claims for preliminary and injunctive relief to enjoin defendants from taking any adverse actions against plaintiffs' gaming businesses. Relying on *Fieger v Cox*, 274 Mich App 449; 734 NW2d 602 (2007), the court ruled that it is impermissible for it "to thwart the Attorney General's executive authority to properly investigate and pursue potential criminal conduct" by granting the injunctive relief requested. Next, addressing plaintiffs' requests for declaratory relief, the court again noted that Michigan jurisprudence did not address the present factual circumstances. The court rejected the caselaw plaintiffs relied on because, in those cases, the plaintiffs were not asking for a declaration of criminal liability regarding past actions. Finding no binding, on-point authority, the court turned its discussion to secondary sources and out-of-state caselaw, which recognized "that declaratory relief should not be available where the action for declaratory relief challenges the application of the law to an existing set of facts, and where no challenge to the underlying criminal statute(s) was raised." After a brief discussion of that caselaw, the court denied plaintiffs' requests for declaratory relief.

Accordingly, the Court of Claims entered judgment for defendants in each case. Plaintiffs filed appeals by right in each case, which this Court consolidated for efficient administration. *Waterford Redemption Ctr LLC v Gaming Control Bd/Executive Dir*, unpublished order of the Court of Appeals, entered February 10, 2020 (Docket Nos. 352176; 352177).

## II. ANALYSIS

## A. MOOTNESS

At the outset, defendants allege that these appeals are moot because they concern the propriety of Internet games and the Lawful Internet Gaming Act (LIGA), MCL 432.301 *et seq.*, now governs these games. We disagree.

"We review de novo whether an issue is moot." *Garrett v Washington*, 314 Mich App 436, 449; 886 NW2d 762 (2016).

"As a general rule, an appellate court will not decide moot issues." *B P 7 v Bureau of State Lottery*, 231 Mich App 356, 359; 586 NW2d 117 (1998). "An issue is deemed moot when an event occurs that renders it impossible for a reviewing court to grant relief." *Id*.

One day after the Court of Claims entered judgment for defendants in this case, the Legislature enacted the LIGA, effective December 20, 2019, which applies to both games of skill and games of chance offered for play through the Internet. See MCL 432.303(q)[1] and MCL 432.304(1). The LIGA provides that "Internet gaming may be conducted *only to the extent* that it is conducted in accordance with this act." MCL 432.304(1) (emphasis added). Additionally, the Act requires that an Internet gaming operator be licensed in order to offer Internet games. MCL 432.303(s). "Internet gaming" is defined, in part, to "mean[] a game of skill or chance that is offered for play through the internet in which an individual wagers money or something of monetary value for the opportunity to win money or something of monetary value." MCL 432.303(q). Plaintiffs do not dispute that they do not have a license to operate their games.

Plaintiffs, however, dispute the applicability of the LIGA to their businesses by alleging that they do not offer the games "through the internet." The LIGA defines "internet" as "the international computer network of interoperable packet-switched data networks, inclusive of such additional technological platforms as mobile, satellite, and other electronic distribution channels." MCL 432.303(p). Plaintiffs are steadfast in their assertion that they do not offer their games through the Internet while defendants assert the opposite; neither party, however, cites record evidence supporting their opposing views. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give issues cursory treatment with little or no citation of supporting authority." *Houghton v Keller*, 256 Mich App 336, 339; 662 NW2d 854 (2003) (citations omitted). Moreover, because of the timing of the LIGA's enactment, this issue was not addressed during the lower court proceedings. However, evidence in the record shows that at least some of plaintiffs' games are not offered through the Internet. As a result, these appeals have not been rendered moot by the enactment of the LIGA. At any rate, because we conclude that the Court of Claims properly granted defendants' motion for summary disposition, the issue is not dispositive as plaintiffs are not entitled to relief.

## B. DECLARATORY RELIEF

---

[1] The amendments to MCL 432.303 became effective on March 24, 2021. 2020 PA 327.

Plaintiffs first argue that the Court of Claims abused its discretion by denying their request for declaratory relief. We disagree.

A decision on a motion for summary disposition is reviewed de novo. *Spiek v Dep't of Transp*, 456 Mich 331, 337; 572 NW2d 201 (1998). A motion under MCR 2.116(C)(8) tests the legal sufficiency of the complaint. *Id*. "A motion under MCR 2.116(C)(8) may be granted only where the claims alleged are so clearly unenforceable as a matter of law that no factual development could possibly justify recovery." *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999) (quotation marks and citation omitted). The Court considers only the pleadings in a light most favorable to the nonmoving party, accepting as true all well-pleaded factual allegations. *Id*. Further, a court's decision to grant or deny declaratory relief is reviewed for an abuse of discretion. *Gauthier v Alpena Co Prosecutor*, 267 Mich App 167, 170; 703 NW2d 818 (2005).

A cursory review of plaintiffs' complaints shows that they alleged that they operated their games businesses based on a good-faith belief that the games were legal, that plaintiffs operated the games businesses for several years without interference from defendants, and that the various aspects of the games complied with MCR 750.310b, but that defendants' cease and desist letters indicated otherwise. Based on these factual allegations, plaintiffs sought declaratory relief "confirming" that their games are redemption skill games permitted under MCL 750.310b and are protected and permitted businesses under the statute. Plaintiffs did not allege that the statute was invalid. The dispute in this case concerns whether these allegations, accepting them as true, state a claim applicable for declaratory relief.

"An action for a declaratory judgment is typically equitable in nature[.]" *Adair v State*, 486 Mich 468, 490; 785 NW2d 119 (2010). "The Declaratory Judgment rule was intended and has been liberally construed to provide a broad, flexible remedy with a view to making the courts more accessible to the people." *Shavers v Attorney General*, 402 Mich 554, 588; 267 NW2d 72 (1978). Generally, "[t]he purpose of a declaratory judgment is to enable the parties to obtain adjudication of rights before an actual injury occurs, to settle a matter before it ripens into a violation of the law or a breach of contract, or to avoid multiplicity of actions by affording a remedy for declaring in expedient action the rights and obligations of all litigants." *Rose v State Farm Mut Auto Ins Co*, 274 Mich App 291, 294; 732 NW2d 160 (2006).

The rule governing declaratory judgments, MCR 2.605, provides in relevant part:

(A) Power To Enter Declaratory Judgment.

(1) In a case of actual controversy within its jurisdiction, a Michigan court of record may declare the rights and other legal relations of an interested party seeking a declaratory judgment, whether or not other relief is or could be sought or granted.

(2) For the purpose of this rule, an action is considered within the jurisdiction of a court if the court would have jurisdiction of an action on the same claim or claims in which the plaintiff sought relief other than a declaratory judgment.

(B) Procedure. The procedure for obtaining declaratory relief is in accordance with these rules, and the right to trial by jury may be demanded under the circumstances and in the manner provided in the constitution, statutes, and court rules of the State of Michigan.

(C) Other Adequate Remedy. The existence of another adequate remedy does not preclude a judgment for declaratory relief in an appropriate case.

\* \* \*

(E) Effect; Review. Declaratory judgments have the force and effect of, and are reviewable as, final judgments.

(F) Other Relief. Further necessary or proper relief based on a declaratory judgment may be granted, after reasonable notice and hearing, against a party whose rights have been determined by the declaratory judgment.

As plaintiffs observe, Michigan caselaw has established that "[a] declaratory action is a proper remedy to test the validity of a criminal statute where it affects one in his trade, business or occupation." *Strager v Olsen*, 10 Mich App 166, 171; 159 NW2d 175 (1968). In *Strager*, 10 Mich App at 168, the plaintiff sought a declaratory judgment in regard to the validity of certain provisions of the Home Improvement Finance Act, MCL 455.1101 *et seq.*, after the county prosecutor informed the plaintiff that an informal complaint had been received that charged him with violating the statute. This Court explained that "a plaintiff may obtain declaratory relief concerning a statute regulating his business practices even though the statute provides a criminal sanction for its violation." *Id*. at 171. See also *Mich Salt Works v Baird*, 173 Mich 655, 658; 139 NW 1030 (1913) (stating that the plaintiff properly brought a declaratory judgment action to determine whether the salt inspection act had been superseded by subsequent laws).

Additionally, declaratory judgment actions have been used to determine whether conduct violates a statute without the implication of criminal liability. See *Kalamazoo Police Supervisor's Ass'n v Kalamazoo*, 130 Mich App 513, 518; 343 NW2d 601 (1983) (explaining that declaratory judgment action was proper to determine whether negotiated work hours for public safety officers violated the Fire Department Hours of Labor Act). See also *Cheboygan Sportsman Club v Cheboygan Co Prosecuting Attorney*, 307 Mich App 71, 72-73; 858 NW2d 751 (2014) (appeal from a declaratory judgment stating that the prohibition against discharging firearms within 150 yards of occupied residences did not apply to the plaintiff's shooting range).

Similarly, specific Michigan statutes allow a plaintiff to bring a declaratory judgment action to determine the legality of certain conduct. For example, MCL 333.7459(1) provides that a merchant who receives notice under MCL 333.7453(2) that he or she is offering prohibited drug paraphernalia for sale "may commence an action for a declaratory judgment to obtain an adjudication of the legality of the intended sale or offer to sell" those items. See *Gauthier*, 267 Mich App at 169 (explaining that the plaintiff brought "an action seeking a declaratory judgment regarding the legality of the items he was offering for sale at his store" pursuant to MCL 333.7459(1)). Further, MCL 600.2938(2) outlines the procedure for a plaintiff to bring an action

in the circuit court "to obtain an adjudication of the lawful propriety of the sale, distribution, possession or acquisition of" possibly obscene material.

In this case, plaintiffs relied on *FACE Trading, Inc v Dep't of Consumer and Indus Servs*, 270 Mich App 653; 717 NW2d 377 (2006), to support their contention that a declaratory judgment action was appropriate to determine whether their games constituted "redemption games" exempt from the general prohibition against gambling under MCL 750.310b(1). In *FACE Trading, Inc*, 270 Mich App at 656, the dispute concerned a product called "Ad-Tabs," cardboard tickets with a discount coupon on one side and a cash prize game on the other side. Local retailers, such as convenience stores, bowling alleys, restaurants, and taverns, sold Ad-Tabs to the general public. *Id*. at 657. "Shortly after retailers began to sell Ad-Tabs in Michigan, the [liquor control commission] began issuing citations to retailers who held liquor licenses on the basis that the sale of Ad-Tabs constituted unlawful gambling." *Id*. at 382. In response, the plaintiff distributor of Ad-Tabs brought an action seeking a declaratory judgment that Ad-Tabs amounted to permissible "game promotions" instead of illegal lotteries. *Id*. at 382. This Court affirmed the trial court's order granting summary disposition in favor of the defendants, concluding that the sale of Ad-Tabs constituted the promotion of a lottery. *Id*. at 391.

However, as pointed out by the Court of Claims, the aforementioned case is distinguishable from the instant case. In *FACE Trading, Inc*, 270 Mich at 382, the liquor control commission issued citations to retailers selling Ad-Tabs, but none of the named defendants had taken any action against the plaintiff distributor. Indeed, while addressing the proper burden of proof to be applied in declaratory actions, this Court stated that "no state power has been exercised against FACE in any sense." *Id*. at 384. This Court further explained that the plaintiff sued the defendant to prevent the enforcement of the statute against customers who sold Ad-Tabs. *Id*. Accordingly, this Court concluded that "because only the rights and status of FACE and [the] defendants are involved, FACE's criminal liability is not implicated." *Id*. See also *Cheboygan Sportsman Club*, 307 Mich App at 307 Mich App at 76 (explaining that the plaintiff was "not being threatened with any criminal liability; rather, the threat of prosecution [was] to any *individuals* who discharge firearms there").

On the other hand, in this case, the MGCB sent plaintiffs a letter stating that plaintiffs were engaged in illegal gambling. Moreover, in the letter, the MGCB threatened to refer the matter to the Attorney General to initiate legal action if plaintiffs continued to operate their businesses. As a result, unlike the plaintiff in *FACE Trading, Inc*, 270 Mich App at 384, the criminal liability of plaintiffs in this case has been implicated.

In addition, plaintiffs do not dispute the validity of the statutory prohibition against gambling. The Court of Claims noted that plaintiffs were essentially asking for a declaration of criminal liability regarding past actions without challenging the underlying criminal statute. Finding that there was no binding, on-point authority, the court considered secondary sources and out-of-state caselaw. See *Haydew v Farm Bureau Ins Co*, 332 Mich App 719, __; __ NW2d __

(2020) (Docket No. 345516); slip op at 4-5 (adopting the reasoning from out-of-state cases to confront an issue not previously addressed in a published Michigan decision).[2]

The entry for "declaratory judgments" in American Jurisprudence provides the following:

> Although declaratory judgment proceedings cannot generally be used to decide matters properly determinable in criminal proceedings, the general rule that the construction and validity of statutes may be determined by declaratory judgment may allow a declaratory judgment in matters determining the validity of criminal or penal statutes, including procedural provisions of law where there is no other reasonable remedy available to settle uncertainty as to valuable legal rights. However, while a declaratory judgment action to determine the constitutionality of a criminal statute prior to prosecution is not completely barred, limits on a district court's civil jurisdiction to construe or enjoin enforcement of a criminal statute apply as well to suits seeking declaratory relief.  [22A Am Jur 2d, Declaratory Judgments, § 57.]

Moreover, 22A Am Jur 2d, Criminal Prosecutions, § 54, in pertinent part, states that "[a] declaratory judgment is not available to restrain a criminal prosecution where the facts are in dispute, or open to different interpretations, or where there are insufficient facts presented to enable the court to balance the State's interest in enforcing its penal laws with an individual's asserted rights."

In *Daniels v Mobley*, 285 Va 402; 737 SE2d 895, 897 (2013), the plaintiff sought a declaratory judgment to determine the legality of hosting Texas Hold 'Em poker games after the prosecutor sent the plaintiff a letter stating that poker games constituted illegal gambling.  The Virginia Supreme Court explained that the criminal aspects of the action were dominating, and that the right that the plaintiff seemingly wanted to vindicate related "to criminal prosecution, rendering declaratory judgment inappropriate."  *Id*. at 900.  That Court further explained that "resolution of the declaratory judgment action would not impact any subsequent criminal proceeding," and that "[g]ranting the requested declaration concerning the legality of Texas Hold 'Em poker would be merely an advisory opinion."  *Id*.  See also *Kahaikupuna v Hawaii*, 109 Hawaii 230, 237; 124 P3d 975 (2005) (holding that declaratory action was not the appropriate method to challenge laws that prohibited cockfighting because the plaintiffs were essentially requesting injunctive relief that would prohibit the enforcement of the laws against them).  Like the Court of Claims, we find the aforementioned authorities persuasive and adopt their reasoning to conclude that declaratory relief is not appropriate in this situation.

Moreover, plaintiffs' assertion that declaratory relief is appropriate because there is no other adequate remedy available is without merit.  In regard to Michigan administrative agencies, MCL 24.263 provides that an interested person may request "a declaratory ruling as to the applicability to an actual state of facts of a statute administered by the agency or of a rule or order

---

[2] "Caselaw from sister states and federal courts is not binding precedent but may be relied on for its persuasive value."  *Id*. at slip op 5 n 5.

of the agency." Such a declaratory ruling would be binding on the agency and person requesting it, but the "ruling is subject to judicial review in the same manner as an agency final decision or order in a contested case." MCL 24.632. See *Kahaikupuna*, 109 Hawaii 346 (stating that "it has long been established that declaratory relief is not appropriate for criminal matters where a full and adequate remedy is provided by another well-known form of action") (quotation marks and citation omitted).

Accordingly, the Court of Claims did not abuse its discretion by denying the plaintiffs' request for declaratory relief. See *Gauthier*, 267 Mich App at 170.

Further, plaintiffs contend that the Court of Claims did not adequately explain its reasoning for granting the motion for summary disposition pursuant to MCR 2.116(C)(8). The record, however, shows that the Court of Claims did provide reasons for dismissing plaintiffs' declaratory judgment action under MCR 2.116(C)(8). Mainly, the Court of Claims explained that plaintiffs had not asserted a justiciable claim, given plaintiffs had not pleaded a challenge to the validity of the statute and the relief requested would amount to no more than an advisory opinion as to plaintiffs' past conduct. That the Court of Claims did not connect its analysis to plaintiffs' complaints in a manner that plaintiffs would have preferred is inconsequential. While the court's reasoning relied on out-of-state authority, its analysis was adequate and no error occurred. See *Maiden*, 461 Mich at 119.

## C. INJUNCTIVE RELIEF

Finally, plaintiffs assert that the Court of Claims erred by dismissing their request for injunctive relief. We disagree.

"The grant or denial of a preliminary injunction is within the sound discretion of the trial court, and this Court will not reverse that decision absent an abuse of that discretion." *Davis v Detroit Fin Review Team*, 296 Mich App 568, 612; 821 NW2d 896 (2012).

"[I]njunctive relief is an extraordinary remedy that issues only when justice requires, there is no adequate remedy at law, and there exists a real and imminent danger of irreparable injury." *Id*. at 613 (quotation marks and citations omitted). A court should consider the following factors in determining whether to grant a preliminary injunction:

> (1) the likelihood that the party seeking the injunction will prevail on the merits, (2) the danger that the party seeking the injunction will suffer irreparable harm if the injunction is not issued, (3) the risk that the party seeking the injunction would be harmed more by the absence of an injunction than the opposing party would be by the granting of the relief, and (4) the harm to the public interest if the injunction is issued. [*Id*. (quotation marks and citations omitted).]

Specifically, plaintiffs contend that the court erred by dismissing plaintiffs' request for injunctive relief by relying on *Fieger*, 274 Mich App at 455-457. According to plaintiffs, that case is distinguishable and aspects of equity in this matter justify injunctive relief. In *Fieger*, 274 Mich App at 451, the Attorney General initiated a felony investigation for campaign finance violations, seeking subpoenas and warrants through the district court. Instead of challenging those warrants

and subpoenas in the district court, the plaintiffs mounted a collateral attack by filing a separate original action in the circuit court, effectively seeking to halt the Attorney General's investigation. *Id*. at 459. The circuit court granted the request and issued a temporary restraining order directing the district judge not to issue any further search warrants or subpoenas. *Id*. at 460. This Court held, in relevant part, that the circuit court's issuance of a temporary restraining order violated separation-of-powers principles, by constraining the Attorney General's authority to investigate and pursue potential violations of law. *Id*. at 467-468.

Plaintiffs are correct that the factual circumstances in *Fieger* are not the same as the facts in the instant case. Yet, *Fieger* is not different in material aspects that would change application of the separation-of-powers principles espoused therein. In this case, the MGCB had already initiated an investigation that showed violations of the Gaming Act. The Executive Director sent each plaintiff a cease and desist letter, which indicated that if plaintiffs did not stop operating their gaming businesses, the matters would be referred to the Attorney General for further action. In their complaints, plaintiffs asked that the court issue both a preliminary and permanent injunction "enjoining Defendants from taking any adverse civil or penal action and any seizure/forfeiture of assets actions" so long as plaintiffs' complied with MCL 750.310b. Under these circumstances, the Court of Claims was correct to conclude that an injunction would operate to constrain the Attorney General's executive functions. Plaintiffs cite no law establishing that considerations of equity should overcome separation-of-powers principles. As a result, the Court of Claims did not err by denying plaintiffs' request for injunctive relief. See *id*. at 468.

Affirmed.


/s/ Douglas B. Shapiro
/s/ Kathleen Jansen
/s/ Jane M. Beckering

-11-